FILED
9/21/07
CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

MICHAEL A. FADALLA AND DANA S. FADALLA,
Individually, and on behalf of their minor children,
OLIVIA, EMILY AND LAUREN FADALLA,

    PLAINTIFFS,

v.

Case Number:

3:07-mc-42-J-32MCR

LIFE AUTOMOTIVE PRODUCTS, INC.,
MARTY COLEMAN, LARRY COLEMAN,
MELISSA JACKSON, COLEMAN-TAYLOR TRANSMISSIONS
COMPANY, INC., HUMANA INSURANCE COMPANY, PPO,
and SHEILA HICKS, PLAN ADMINISTRATOR,

    DEFENDANTS.

## MOTION TO QUASH SUBPOENA AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW, Engine Fog, Inc. (hereinafter "Engine Fog"), by and through its undersigned attorney, and files this Motion to Quash Subpoena, pursuant to Fed.R.Civ.P. Rule 45(c)(3)(A) and (B), and Memorandum of Law in Support Thereof, and states:

    1.    Pursuant to Rule 3.01(g) of the Rules of the United States District Court for the Middle District of Florida, Engine Fog has conferred with counsel for the opposing party in a good faith effort to resolve the issues raised herein.

    2.    On or about August 27, 2007, Defendants Life Automotive Products, Inc. et al. (hereinafter "Life Automotive") caused to be served on Engine Fog a Subpoena Duces Tecum without deposition.

3.    Engine Fog served its Objections to the subpoena on September 10, 2007 pursuant to Fed.R.Civ.P. Rule 45(c)(2)(B).

4.    Engine Fog now files this Motion to Quash Subpoena pursuant to Fed.R.Civ.P. Rule 45(c)(3)(A) and (B) for several reasons, including but not limited to the fact that a majority of the requested documents are confidential. Disclosure would require Engine Fog to reveal information privileged to Engine Fog and its customers and suppliers. Engine Fog is a direct competitor of Life Automotive and disclosure of the requested information would give Life Automotive an unfair competitive advantage. Additionally, such disclosure would violate the non-disclosure agreements Engine Fog has with its customers and suppliers.

5.    In addition, requiring Engine Fog to gather the documents requested would also impose an undue burden on the non-party, especially in light of the fact that the requests are irrelevant, not likely to lead to discoverable information, overbroad, and harassing.

## MEMORANDUM OF LAW IN SUPPORT OF OLIVER & COMPANY'S MOTION TO QUASH SUBPOENA

Pursuant to Fed.R.Civ.P. Rule 45(c)(3)(A)(iii) and (iv), on timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it requires disclosure of privileged or other protected matter and no exception or waiver applies, or subjects a person to undue burden. Id. In addition, Fed.R.Civ.P. Rule 45(c)(3)(B)(i), states that the court may quash or modify the subpoena if it discloses a trade secret or other confidential research, development, or commercial information. Id.

Although a specified period of time for objections is set at fourteen days, a general period of time for a motion to quash is established with the language, "upon timely motion." <u>Schaaf v. Smithkline Beecham Corporation</u>, 2006 WL 2246146, 1 (M.D. Fla. 2006), citing to <u>Edw. C. Levy Co., Inc. v. Int'l Union of Operating Engineers, Local 150, AFL-CIO</u>, 2006 WL 1544727 (N.D. Ind., June 1, 2006)(finding that a motion to quash was timely filed twenty-seven (27) days after service of the subpoena). In that Engine Fog is filing this Motion within twenty-five (25) days of being served with the subpoena, its Motion is filed timely.

A case-specific balancing test applies wherein the court must weigh factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by the request, and the particularity with which the documents are described against the burden imposed on the person ordered to produced the desired information. <u>Schaaf v. Smithkline Beecham Corporation</u> at 2. In addition, Courts must consider the status of a witness as a non-party when determining the degree of burden. <u>Id.</u> referring to <u>American Elec. Power Co., Inc. v. United States</u>, 191 F.R.D. 132 (S.D.Oh.1999). The status of the person as a non-party is a factor often weighing against disclosure. <u>Id</u>.

### A. The Subpoena Should be Quashed as the Information Requested is Confidential Business Information

Pursuant to Fed.R.Civ.P. Rule 45(c)(3)(A)(iii), the Court shall quash or modify the subpoena if it requires disclosure of privileged or other protected matter and no exception or waiver applies. Requests 1 through 6, 8, 9, and 13 through 18 of the subpoena should be quashed as they seek confidential business information to Engine Fog, such as information regarding new product technology. *See ¶ 5 of Affidavit of Paul*

*Hughett.*[1] Engine Fog has nondisclosure agreement with its distributors, including Oliver & Company, Inc., that prohibits the release of certain documents and information. *See ¶ 6 of Affidavit of Paul Hughett.* Requiring Engine Fog to comply with the subpoena would cause it to violate its nondisclosure agreement. Additionally, Engine Fog has secrecy agreements with several of its distributors, which also prohibits Engine Fog from disclosing any confidential, proprietary information requested. Id. at ¶ 7.

Engine Fog and Life Automotive are both manufacturers of automotive chemical products. Id. at ¶s 2 & 4. As such, Life Automotive is a direct competitor of Engine Fog. Id. at ¶ 4. Release of the requested information would have a direct impact on Engine Fog and would be detrimental to it, its customers, and suppliers and would certainly have a negative impact on Engine Fog's business. Id. at ¶ 5. Disclosure of the requested information would provide Life Automotive with an unfair competitive advantage. Id. Additionally, Engine Fog is in an adversarial position with Life Automotive in a matter unrelated to this litigation. Id. at 9. In that this adversarial situation may result in litigation between Engine Fog and Life Automotive, production of the requested information would be detrimental to Engine Fog's position. Id.

This Court has found that disclosure of confidential information to a competitor is **presumed** to be harmful to the disclosing entity and is **presumed** that said disclosure is more than to competitors than non-competitors. Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc., 216 F.R.D. 533, 535-536 (M.D. Fla. 2003)(quashing non-party's subpoena).

---

[1] It should be noted that the requests were distinguished by bullets, not numbers. However, for purposes of this Memorandum of Law, Engine Fog refers to the requests/bullets numerically.

Even if the Court finds that the requested documents are more like "trade secrets," the subpoena should still be quashed. Fed.R.Civ.P. Rule 45(c)(3)(B)(i), states that the court may quash or modify the subpoena if it discloses a trade secret or other confidential research, development, or commercial information. Id. Trade secrets are defined as information, including a formula, pattern, compilation, program, device, method, technique, or process that (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and (2) are the subject of efforts that are reasonable under the circumstances to maintain its secrecy. F.S. § 688.002(4).

Again, Life Automotive is seeking information regarding new product technology of Engine Fog. This confidential information is not publicly known and Life Automotive can gain an economic value and competitive edge from its disclosure. Obviously, this information is sensitive in subject or else there would be no need to have non-disclosure and secrecy agreements in place.

Just like the defendant in Cytodyne Technologies, Inc., Defendants in the instant matter cannot show that the information requested is relevant and necessary. However, even if one were to assume that the information is relevant and necessary, that still does not outweigh the harm that will fall upon Engine Fog, its business, and its clients if disclosed. Determination of whether the need outweighs the harm falls within the sound discretion of the trial court. Id. at 536. (finding that the harm to non-party in disclosing information outweighed the defendant's need for the production of documents).

Engine Fog has demonstrated that the requests are confidential information and subject to a non-disclosure agreement by which it must abide. Release of this confidential information will prove harmful to Engine Fog. As such, requests 1 through 6, 8, 9, and 13 through 18 of the Subpoena should be quashed under Fed.R.Civ.P. Rule 45(c)(3)(A)(iii), or in the alternative, Rule 45(c)(3)(B)(i).

### B. The Subpoena Should be Quashed because it Subjects Engine Fog to Undue Burden and the Subpoena is Harassing

Pursuant to Fed.R.Civ.P. Rule 45(c)(3)(A)(iv), the Court shall quash or modify a subpoena if it subjects a person to undue burden. Defendants are requesting several categories of documents, again all confidential, which would require Engine Fog to sort through all of its business records and documents in order to produce the specific documents requested. This places an undue burden on Engine Fog, a non-party to the instant matter. *See ¶ 8 of Affidavit of Paul Hughett.* Given the amount of time it would take Engine Fog to locate these confidential documents, the request becomes harassing. For these additional reasons, requests 1 through 6, 8, 9, and 13 through 18 of the Subpoena should be quashed in accordance with Fed.R.Civ.P. Rule 45(c)(3)(A)(iv).

### C. The Subpoena Should be Quashed because the Requests are Overbroad

While Rule 45 does not include relevance as an enumeration reason for quashing a subpoena, it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Fed.R.Civ.P. Rule 26(b) and Rule 34. Id. As such, a court must examine whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards set forth in Rule 26(b) and as

applied to Rule 34 requests for production. <u>Kona Spring Water Distributing, Ltd. v. World Triathlon Corporation</u>, 2006 WL 905517, 2 (M.D. Fla. 2006).

Request 8 of the subpoena is not limited in time, but instead, requests all contracts and agreements between Engine Fog and its directors, officers and employees and Oliver & Company. This request is overly broad.

Although requests 16 through 18 of the subpoena attempt to limit the request for a specified time period (June 1, 2005 to the present), the nature of the requests themselves is overly broad. For these additional reasons, requests 8, and 16 through 18 should be quashed.

### D. The Subpoena Should be Quashed because the Requests are Irrelevant to the Underlying Pending Matter

The documents requested in requests 1 through 6, 8, 9, and 13 through 18 are irrelevant to the action and not likely to lead to discoverable evidence. The scope of discovery through a subpoena under Rule 45 is the same as that applicable to Rule 34 and the other discovery rules. <u>Id</u>. The Court in <u>Kona Spring Water Distributing, Ltd</u>. noted that while relevance for purposes of discovery is defined broadly, the right to discovery is not unlimited and does have "ultimate and necessary boundaries." Id. citing <u>Hickman v. Taylor</u>, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed.451 (1947). The <u>Kona</u> Court found that all but one of the request was overbroad and appeared to be nothing more than a fishing expedition. <u>Kona</u> at 2.

In that the U.S. District Court for the Western District of Tennessee, where the underlying action is pending, has issued an opinion finding that Michael Fadalla did not breach the non-compete and non-solicitation agreement between the parties, the

documents Life Automotive has requested for Engine Fog to produce to it are irrelevant. *See the Tennessee Court's Memorandum Opinion Regarding Life Automotive's Application for Preliminary Injunction attached hereto as Exhibit "A"*. Accordingly, Defendants are merely on a fishing expedition, and requests 1, 9, 13, and 15 of the subpoena should be quashed.

## Conclusion

The documents requested of Engine Fog by Life Automotive clearly contain confidential business information and should be protected from disclosure. Engine Fog is a direct competitor of Life Automotive and disclosure of this information would allow Life Automotive to receive a competitive advantage over Engine Fog, which would be detrimental to Engine Fog. In addition, disclosure of the documents requested would cause Engine Fog to violate its nondisclosure and secrecy agreements it has with its distributors. This would also be detrimental to Engine Fog's business. As such, this Court should quash the subpoena served upon Engine Fog to the extent requested in this Motion. As additional grounds for quashing the subpoena, Life Automotive's requests are overbroad and irrelevant, and would subject Engine Fog, a non-party, to an undue burden. To this extent, the requests are harassing. For all of the reasons stated above, this Court should quash the subpoena served upon Engine Fog.

## **CERTIFICATION OF CONFERRING WITH OPPOSING COUNSEL**

Pursuant to Rule 3.01(g) of the Rules for the U.S. District Court for the Middle District of Florida, Counsel for Engine Fog hereby certifies that he has conferred with counsel for Defendants regarding the issues addressed herein, and as of the time of filing this Motion, counsel have not agreed on the resolution of the motion. On or about

September 19, 2007, both counsel discussed the fact that the Tennessee Court Order (attached as Exhibit "A") and the mediation scheduled for September 20, 2007, may abrogate Defendant's need for the documents requested. Defendant's counsel indicated that he would call the undersigned on September 21, 2007 to discuss the full impact of the September 18, 2007 Tennessee Order and mediation on the subpoena. As of the time of filing this Motion, the undersigned has not heard from Defendant's counsel. Accordingly, in an abundance of caution to ensure that this Motion is "timely filed" as required by Rule 45 of the Federal Rules of Civil Procedure, Engine Fog has filed this Motion. Engine Fog will update the Court with any progress made or resolution reached with Defendants' counsel, in accordance with Local Rule 3.01(g).

_____
David S. Wainer, III

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished to W. Kerby Bowling at 7936 Players Forest, Memphis, Tennessee 38119 via facsimile and United States Mail this 21st day of September, 2007.

FORD, MILLER & WAINER, P.A.

_____
DAVID S. WAINER, III, ESQUIRE
Florida Bar No.: 082929
1200 Riverplace Blvd., Suite 600
Jacksonville, Florida 32207
Telephone: (904) 390-1970
Facsimile: (904) 390-1975
Attorney for Engine Fog, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MICHAEL A. FADALLA, ET AL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | No. 06-2679 |
| LIFE AUTOMOTIVE PRODUCTS, ) | |
| INCORPORATED, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION REGARDING DEFENDANT'S
APPLICATION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on the application of the defendant, Life Automotive Products, Inc., ("Life Automotive") for injunctive relief. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. In its application, Life Automotive moves the Court to enjoin the plaintiff, Mr. Michael A. Fadalla, from violating the terms of a non-compete and non-solicitation agreement between the parties. For the reasons stated herein, the Court **DENIES** the defendant's application.

**I. Background Information**

The defendant, Life Automotive is a manufacturer of approximately 30 to 35 chemical additives used in the automobile "fast lube" industry. Life Automotive hired the plaintiff, Mr. Michael A. Fadalla as a National Account Executive on June 1, 2005, at which time Mr. Fadalla signed an agreement that included both a twenty-four (24) month non-compete clause and a

1

EXHIBIT "A"

twenty-four (24) month non-solicitation clause. The relevant language in the non-compete clause drafted by the defendant is as follows:

> Employee shall not directly or indirectly own, manage, operate, join, control or participate in the ownership, management, operation or control of or be connected in any manner with any business, whether as agent, security holder, creditor, consultant or otherwise, *engaged primarily in transmission product sales*, trade shows and/or seminars *with International Lubricants, Inc., Heartland Manufacturing, Gold Eagle Corp., C.A.T. Products, Inc. (Run-Rite)*.

(Tr. Ex. 2) (emphasis added). The relevant language in the non-solicitation clause drafted by the defendant is as follows:

> Employee shall not directly or indirectly *solicit, divert, take away or attempt to take away* any customers of the Employer, either on his own behalf or in conjunction with any other person, firm, partnership, or corporation.

Id. (emphasis added). After approximately ten months of employment, Mr. Fadalla gave notice of his resignation on March 28, 2006, and his last day of employment was April 1, 2006.

Subsequent to Mr. Fadalla's resignation, Life Automotive learned that Mr. Fadalla was associated with Oliver & Company, a distributor of automotive chemical additives that are manufactured by several different companies. Life Automotive asserts that Mr. Fadalla's association with Oliver & Company is a clear violation of the non-compete agreement. Furthermore, Life Automotive contends that, subsequent to his departure, Mr. Fadalla solicited EZ Lube, one of the defendant's customers, to leave Life Automotive with him, in violation of the non-solicitation agreement. Arguing that Mr. Fadalla has breached both the non-compete and non-solicitation clauses in the Agreement, Life Automotive now seeks to enjoin Mr. Fadalla from working for any organization that competes with the defendant and from soliciting the defendant's customers.

2

In response to the defendant's motions, Mr. Fadalla asserts that he has not violated the non-compete agreement or the non-solicitation agreement. First, Mr. Fadalla contends that under the plain language of the non-compete agreement, he is only prohibited from participating in the sale of transmission products, not the distribution of such products, which is Oliver & Company's primary mode of business. Second, Mr. Fadalla argues that any such restrictions apply only to the manufacturers specifically listed in the Agreement, which does not include Oliver & Company. Further, Mr. Fadalla contends that he established an ongoing business relationship with EZ Lube many years prior to joining Life Automotive, which resumed at EZ Lube's request and upon EZ Lube's initiation subsequent to his departure from Life Automotive.

In a sworn deposition, Mr. Al Braun, Chief Executive Officer of EZ Lube, verified that he and Mr. Fadalla had a business relationship for many years prior to Mr. Fadalla joining Life Automotive, that Mr. Fadalla did not solicit EZ Lube after he left Life Automotive. Mr. Braun stated that he decided to dissolve the business relationship between EZ Lube and Life Automotive essentially for what Mr. Braun believed to be poor customer service and business practices that he considered in his opinion to be either deceptive or misleading. Mr. Braun stated that after discontinuing his business relationship with Life Automotive, he contacted Mr. Fadalla in April 2006 to discuss resuming their business relationship. Mr. Braun further verified that he initiated those discussions and that they occurred subsequent to Mr. Fadalla's departure from Life Automotive.

**II. Legal Standard**

The preliminary injunction is "an extraordinary and drastic remedy" that should be granted with great caution. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). When faced with a motion for a preliminary injunction, a district court must consider four factors: (1) the

3

movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000). These factors are not prerequisites that must be satisfied before a court can issue a preliminary injunction. Performance Unlimited, Inc., 52 F.3d 1373, 1381 (6th Cir. 1995). Rather, the district court balances all four factors in determining whether injunctive relief is appropriate. Id. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, "a district court is required to make specific findings concerning each of the four factors." In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985).

### III. Analysis

#### A. Likelihood of Success on the Merits

In order to prevail on a claim for breach of the non-compete and non-solicitation agreements, the injured party must show (1) the existence of an enforceable covenant; (2) non-performance and/or conduct amounting to a breach of the covenant; and (3) damages resulting from the breach. Life Care Ctrs. of Am. v. Charles Town Ass'n, 79 F.3d 496, 514 (6th Cir. 1999). Under the facts of the present case, however, the Court concludes that the defendant is unlikely to be successful on the merits.

For a non-competition covenant to be enforceable, the agreement must be reasonable in both geographic scope and duration. Murfreesboro Med. Clinic, P.A. v. Udom, 166 S.W.3d 674, 678 (Tenn. 2005). In determining the reasonableness of a non-compete agreement, the court also weighs whether the employer has a "legitimate business interest for the protection of which a restrictive covenant is reasonable." Hasty v. Rent-A-Driver, Inc., 671 S.W.2d 471, 473 (Tenn. 1984). According to the Tennessee Supreme Court in Hasty:

4

> There is no inflexible formula for deciding the ubiquitous question of reasonableness, insofar as noncompetitive covenants are concerned. Each case must stand or fall on its own facts. However, there are certain elements which should always be considered in ascertaining the reasonableness of such agreements. Among these are: the consideration supporting the agreements; the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest.

Id. at 473 (citing Allright Auto Parks, Inc. v. Berry, 409 S.W.2d 361, 363 (Tenn. 1966)).

Furthermore, the court in Hasty noted:

> Of course, any competition by a former employee may well injure the business of the employer. *An employer, however, cannot by contract restrain ordinary competition.* In order for an employer to be entitled to protection, there must be special facts present over and above ordinary competition. These special facts must be such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer.

Id. (internal citations omitted) (emphasis added).

In essence, it is the defendant's position that this court should read beyond the plain language of the non-compete covenant and find that Mr. Fadalla is enjoined from engaging in any business whatsoever related to the sales or distribution of automotive chemicals on a nationwide basis for two years. Although Life Automotive asserts that Mr. Fadalla is free to work for any company that is not a competitor, it also admits that it has a "nationwide presence with customers scattered throughout the United States." Mr. Fadalla's job title while employed by Life Automotive was as a "national account executive," indicating that he dealt with Life Automotive's accounts on a national level. As the defendant asserts that it has a nationwide presence, the geographic scope of the non-compete agreement under its proposed interpretation would necessarily be nationwide. At the present time, Mr. Fadalla is currently associated with Oliver & Company, a company located in Alabama that was not included in the covenant drafted

5

by the defendant. The facts of this case clearly illustrate the impossible situation in which Mr. Fadalla would be placed under the defendant's implied interpretation of the geographic scope: Life Automotive is located in Tennessee, whereas Oliver & Company is located in Alabama; the client whom the defendant alleges the plaintiff solicited, EZ Lube, is located in Southern California. Mr. Fadalla would be hard pressed to find employment anywhere in the country in his field that would not violate the defendant's proposed interpretation of the geographic scope.

Here, it appears that Life Automotive simply wants to restrain ordinary competition in the automotive chemicals business. Had the defendant seriously considered Oliver & Company to be a serious competitor for its business, it would have included that company in the language of the non-compete agreement, but it failed to do so. Furthermore, Life Automotive failed to include any language in the agreement that would have put Mr. Fadalla on notice that the covenant applied to companies other than those it listed. As the Tennessee Supreme Court stated in Hasty, an employer cannot restrain ordinary competition by contractual obligations. Id. The employer must demonstrate special facts above and beyond ordinary competition such that the employee would gain an unfair advantage in future competition. Id. The defendant in the present case has failed to establish such additional and special facts.

In determining whether Mr. Fadalla's conduct amounts to a breach of his contractual obligations, a careful analysis of the language in the agreement is critical. As stated previously, Life Automotive drafted the covenant with language indicating that Mr. Fadalla could not engage in transmission product sales, trade shows, or seminars with four enumerated companies: International Lubricants, Inc. Heartland Manufacturing, Gold Eagle Corp., and C.A.T. Products, Inc. Relying upon the plain language of the provision, it is clear that Mr. Fadalla has not violated the terms of the agreement. In his current position, Mr. Fadalla is engaged in

6

automotive chemicals distribution, not transmission product sales. Further, Mr. Fadalla is associated with Oliver & Company, an organization not identified in the agreement as a competitor of Life Automotive. In addition, Life Automotive failed to include any language that would indicate that the covenant was not limited to those four competitors and thus could potentially apply to other competitors. Because Mr. Fadalla's conduct likely did not result in a breach of his contractual obligations, the Court finds it unnecessary to address damages caused by the alleged breach.

### B. Irreparable Harm

Although the defendant alleges that serious and irreparable harm will result if Mr. Fadalla is enjoined, it has provided no evidence supporting this assertion. Life automotive further alleges that, as a national account executive, Mr. Fadalla enjoyed access to sensitive and confidential information, including the chemical formulation of its products and its clients' contact information. It is the defendant's position that Mr. Fadalla would undoubtedly use this information to his advantage should he not be enjoined from doing so. The Court is not persuaded by these arguments. First and foremost, the Court notes that Life Automotive never asserts that Mr. Fadalla ever, in fact, accessed this information above and beyond the ordinary course of his employment duties; rather, the defendant merely asserts that Mr. Fadalla had the capability to access this information during his tenure at Life Automotive. In addition, the defendant has not submitted any evidence that Mr. Fadalla in fact accessed any proprietary information regarding the formulation of Life Automotive's chemical products at any time. Indeed, it is hardly conceivable, given his role as a sales manager, that Mr. Fadalla would have any reason to access any confidential chemical formulas. Alternatively, Life Automotive asserts that Mr. Fadalla had access to the entire database of clients and potential clients whom Life

7

Automotive might solicit. This contact information, however, is widely available on the open market. Thus, it cannot be said that Mr. Fadalla would be certain to use Life Automotive's confidential information to obtain these contacts.

### C. Risk of Substantial Harm to Others

In the present case, there is a substantial risk of harm if the court were to enjoin the plaintiff. For the past nineteen years, Mr. Fadalla has focused his career on the automotive products industry. Through his employment, Mr. Fadalla supports his wife and their three children. If the court were to enjoin Mr. Fadalla from working in the area in which he has established nearly two decades of experience and expertise, it would serve to prevent him from earning a living of any kind for two years. Any such injunction, therefore, would certainly result in substantial harm to Mr. Fadalla and his family.

### D. Impact on the Public Interest

Several factors in the public interest weigh against granting the defendant's motion for preliminary injunction. First, a grant of this injunction would promote uncertainty in contract interpretation. The language used in contractual agreements between two parties should reflect the agreement of the parties and should serve as a reminder of their rights and obligations under the contract. To adopt the defendant's position would effectively add language to the contract, holding that Mr. Fadalla agreed not to work competitors "including, but not limited to," the enumerated companies, a term that Life Automotive did not draft and for which the parties did not bargain. Employees similarly situated to Mr. Fadalla could not rely upon the contractual language in their agreements to guide their future actions if employers were able to appeal to the courts after the fact for unilateral contract modification.

8

In addition, granting the defendant's injunction would result in an unfair restraint on ordinary competition. While it is true that non-compete agreements may be beneficial in preventing unfair competition from former employees who seek to escape their contractual obligations, such is not the case here. The Court finds that Mr. Fadalla has abided by the terms drafted by Life Automotive in the agreement. Rather than preventing unfair competition, under the defendant's view, the court would prevent any competition whatsoever, a result clearly forbidden by Hasty and in direct opposition to well established economic principles.

### IV. Conclusion

Analyzing the facts of the present case under the four factors established in Leary, the defendant's proposed injunction cannot be granted. As evidenced by the explicit language drafted by the defendant in the non-compete agreement and Mr. Braun's deposition testimony, it is unlikely that Mr. Fadalla's conduct violated either the non-compete or the non-solicitation covenants. The defendant has failed to establish that it would suffer irreparable harm without the injunction. On the other hand, it is clear that Mr. Fadalla and his family would suffer substantial harm if the injunction were granted. Finally, granting the injunction would promote instability in contract interpretation, serve as a prohibited restraint on ordinary trade, and would allow the defendant to unilaterally modify the language it drafted in the agreement. Accordingly, by separate Order, this Court denies the defendant's motion for preliminary injunction.

**ORDERED** this 18th day of September 2007.

s/Bernice Bouie Donald
BERNICE BOUIE DONALD
UNITED STATES DISTRICT COURT JUDGE