UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL A. FADALLA and DANA S.
FADALLA, etc.,

        Plaintiffs,

vs.                              Case No.  3:07-mc-42-J-32MCR

LIFE AUTOMOTIVE PRODUCTS, INC., et al.,

        Defendants.

_____/

# O R D E R

**THIS CAUSE** is before the Court on the Motions to Quash Subpoenas filed by

non-parties Oliver & Company, Inc. and Engine Fog, Inc. on September 21, 2007.

(Docs. 1 & 3).  Defendants filed their responses to the Motions on October 11, 2007.

(Docs. 13 & 14).  Accordingly, the Motions are now ripe for review.

I.    **BACKGROUND**[1]

Defendant, Life Automotive Products, Inc. ("Life Auto") manufactures chemical

additives used in the automobile "fast lube" industry.  Plaintiff Michael Fadalla

("Fadalla") worked for Life Auto from June 1, 2005 through April 21, 2006, as a national

---

[1]  This matter was filed as a miscellaneous case in the Jacksonville Division of the Middle
District of Florida because the subpoenas at issue were issued under the authority of this Court.  The
underlying case is pending before the United States District Court, Western District of Tennessee.
The parties have not filed the pleadings in this case and therefore, the Court derives the relevant
underlying facts from the parties' memoranda (Docs. 1, 3, 13 & 14) and the Western District of
Tennessee Court's Memorandum Opinion Regarding Application for Preliminary Injunction (Doc.
1, pp. 10-18).

account executive.  Upon beginning his employment with Life Auto, Fadalla signed an

employment contract which included a twenty-four (24) month non-compete clause and

a twenty-four (24) month non-solicitation clause.  The employment contract also

contained a termination clause that allowed either party to terminate the contract with

ninety (90) days written notice.

On March 26, 2006, Fadalla provided notice to Life Auto that he would be

terminating his employment.  Evidently, Life Auto attempted to settle the remaining

ninety (90) days with Fadalla, but Fadalla refused to accept a severance package.  Life

Auto then terminated Fadalla on April 21, 2006, and paid his salary, commissions, and

health insurance through the end of May 2006.

Following his departure from Life Auto, Fadalla became associated with Oliver &

Company, Inc. ("O&C"), a distributor of automotive chemical additives manufactured by

several outside companies.  In fact, O&C distributes some products manufactured by

Life Auto.  Although it is unclear the specific nature of Fadalla's association with O&C,

Fadalla has represented that his responsibilities include marketing and selling

automotive chemicals and additives for WGC – one of O&C's brands.[2]  (Doc. 15-6, p.

4).  Some time after Fadalla's departure from Life Auto, Fadalla and Bruce Oliver -- the

President of O&C -- met with Paul Hughett, owner of Engine Fog, Inc. ("Engine Fog") –

a company that also manufactures automotive chemical products and a competitor of

---

[2] Life Auto questions whether WGC is merely a trade or brand name or whether it is also an entity which manufactures and markets its products.  These questions are legitimate in light of the  relevant deposition testimony provided to this Court.  Consequently, and as mentioned *infra*, O&C shall provide Life Auto with an explanation regarding the nature of WGC.

Life Auto – for the purpose of discussing the possibility of Engine Fog packaging a series of automotive products for O&C under its WGC label.  Significantly, WGC and Life Auto market and sell competing products.  Specifically, one of the products that WGC markets – an upper engine or intake cleaner – is a competing product with a product Life Auto sells.[3]  (Doc. 15-6, p. 18).

On October 10, 2006, Fadalla filed suit against Life Auto in the United States District Court for the Western District of Tennessee, claiming, *inter alia,* that Life Auto breached his employment contract by terminating him without cause before the expiration of the ninety (90) day notice period.  Life Auto filed a counter claim against Fadalla for breach of the non-compete and non-solicitation clause of the employment contract.  Life Auto then filed a motion for preliminary injunction, seeking an order from the court enjoining Fadalla from violating the terms of the non-compete and non-solicitation agreement between the parties.  On September 18, 2007, the District Court for the Western District of Tennessee denied Life Auto's motion for preliminary injunction.  Upon conducting the requisite analysis for determining whether injunctive relief was appropriate, the court specifically found that Fadalla's conduct likely did not result in a breach of his contractual obligations.  (Doc. 1, p. 18).

Discovery is currently ongoing and on August 27, 2007, Life Auto served a subpoena duces tecum without deposition on both O&C and Engine Fog.  Both entities filed objections to the subpoena (Docs. 7 & 9) and thereafter, filed their respective

---

[3] Interestingly, the upper engine or intake cleaner Life Auto sells, is leased to Life Auto by Engine Fog.

Motions to Quash Subpoena (Docs. 1 & 3) with this Court.[4]  O&C and Engine Fog seek an order from this Court quashing the subpoenas because compliance with the subpoenas would require them to produce confidential business information. Additionally, both O&C and Engine Fog argue that complying with the subpoenas would impose an undue burden on them, in light of the fact that the requests are overbroad, vague, and/or seek irrelevant information.

## II.   <u>ANALYSIS</u>

The scope of discovery under the Federal Rules of Civil Procedure is quite broad; albeit, not unlimited and the court has wide discretion when setting the discovery limits.  <u>Farnsworth v. The Procter & Gamble Co.</u>, 758 F.2d 1545, 1547 (11th Cir. 1985). A non-party may invoke the inherent power of the court to secure protection from discovery which seeks confidential or privileged information or which would cause undue burden on the non-party.  <u>Micro Motion, Inc. v. Kane Steel Co., Inc.</u>, 894 F.2d 1318, 1322 (Fed. Cir. 1990).  Here, O&C and Engine Fog, non-parties to the underlying action, seek protection from this Court pursuant to Rule 45(c)(3)(A) and (B) of Federal Rules of Civil Procedure.

Rule 45(c)(3)(A) states that on timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it requires disclosure of privileged or other protected matter and no exception or waiver applies or if it subjects a person to undue burden.   Fed. R. Civ. P. 45(c)(3)(A)(iii) and (iv).  Additionally, Rule 45(c)(3)(B)

---

[4]  The Subpoenas Duces Tecum were issued under the authority of this Court, as both O&C and Engine Fog are located in Jacksonville, Florida.

authorizes a court to quash or modify a subpoena if it requires disclosure of a trade secret or other confidential research, development, or commercial information.  Fed. R. Civ. P. 45(c)(3)(B)(i) and (iii).  Alternatively, the Court may elect to order production of the requested information only upon specified conditions, but before doing so, it must first determine that the party in whose behalf the subpoena is issued has shown a substantial need for the testimony or material that cannot be otherwise met without undue hardship and that the person to whom the subpoena is addressed will be reasonably compensated.  Id.

The burden of proof in demonstrating that compliance with the subpoenas requires the disclosure of privileged or protected information or that compliance presents an undue burden lies with the moving party and thus, falls upon O&C and Engine Fog in this case.  Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004).  It is Life Auto's burden, however, to prove its requests are relevant. American Electric Power Co., Inc. v. United States, 191 F.R.D. 132, 136 (Fed. Cir. 1999) (noting that the party seeking discovery must demonstrate relevance).  In determining whether the subpoenas are due to be quashed, this Court must balance Life Auto's need for discovery against the burden imposed upon O&C and Engine Fog, along with their interest in keeping the requested information confidential.  Farnsworth, 758 F.2d at 1547; American Electric Power Co., Inc., 191 F.R.D. at 136.  Other factors this Court should consider are the relevance of the requests, the breadth of the request, the time period covered by the requests, and the particularity with which the documents are described.  American Electric Power Co., 191 F.R.D. at 136; see also Wiwa, 392

F.3d at 818.  The status of a person as a non-party is a factor that weighs against

disclosure.  American Electric Power Co., 191 F.R.D. at 136.

> ### A.     O&C's Motion to Quash

Life Auto served a subpoena on the keeper of books and records for O&C on

August 28, 2007, seeking production of various categories of documents.  O&C takes

issue with requests Nos. 1 - 6, 8,9, and 13 - 18; however, Life Auto notes that O&C has

submitted documents responsive to requests Nos. 3,4,5,8, 14, and 16 and that O&C is

not in possession of documents responsive to requests Nos. 2, 6, 7, 17 and 18.  Thus,

Life Auto seeks to discover information responsive to requests Nos. 1,9, 11, 12, 13, and

15.[5]  Accordingly, the Court will consider only these requests with respect to O&C's

Motion to Quash.

> ### Request No. 1:

Life Auto's first request seeks: "All correspondences, including electronic

communications, between [O&C], its directors, officers and employees and Michael

Fadalla, [WGC] and/or Advance Automotive Chemistry from June 1, 2005 to present."

O&C objects to this request because compliance with this request would require O&C to

produce its confidential business information, as well as confidential information about

its customers and suppliers.  (Doc. 1, pp. 3-4); (Doc. 2, Affidavit of Janis Oliver).  Janis

Oliver, the Secretary and Treasurer of O&C, certifies in an Affidavit that O&C "has non-

disclosure agreements with its customers and suppliers that prohibits [sic] the

---

[5] Life Auto also states request No. 10 is at issue; however, in its response, O&C states it has no documents responsive to this request concerning Fadalla.  (Doc. 7, p. 5).  As such, it is unnecessary for the Court to consider this request.

release of certain information and documents.  In some cases, [O&C] is even prohibited

from revealing the name of some of its customers and suppliers." (Doc. 2, p. 2).  Thus,

O&C argues complying with the subpoena would force O&C to violate its non-disclosure

agreements and would generally be detrimental to O&C's business relationships.  (Doc.

2, p. 2).  Specifically, O&C states that compliance with the subpoena would require

O&C to disclose prices, sales, and marketing strategies (information which is not

publicly known), and that such disclosure to Life Auto – a company which manufactures

and markets competing products – would be harmful to O&C.  (Doc. 1, p. 5).

        O&C also argues responding to request No. 1 would subject O&C to undue

burden, as Ms. Oliver estimates she would be required to sort through more than

54,000 emails, in addition to correspondence via mail and facsimile.  (Doc. 1, p. 6; Doc.

2, pp. 3-4).  O&C asserts this could take an unlimited number of hours.  Id.  Finally,

O&C argues the requests are irrelevant to the underlying action based on the

Tennessee District Court's Memorandum Opinion Regarding Life Automotive's

Application for Preliminary Injunction – which denied Life Auto's Motion for Preliminary

Injunction.  (Doc. 1, pp. 7-8).

        Life Auto responds that its request No. 1 is calculated to discover documents

which: (1) provide information on how Fadalla is compensated by O&C for the services

that he renders as well as what those services are; (2) relate to information provided by

Fadalla to O&C about Life Auto; (3) will lead to the discovery of the identities of Life

Auto customers that Fadalla has contacted on behalf of O&C, WGC, and/or his own

behalf; and (4) record communications between Fadalla and O&C while Fadalla was

employed by Life Auto, and following his departure, which are relevant to Life Auto's

defense that it had cause to terminate Fadalla for neglect of his duties and which may

lead to discoverable evidence indicating that Fadalla breached his duty of loyalty to Life

Auto while he was still employed there.   (Doc. 14, p. 12).  In response to O&C's

argument that the information Life Auto seeks is irrelevant as a result of the Tennessee

District Court's Opinion denying Life Auto's motion for a preliminary injunction, Life Auto

asserts the Court did not find that the non-solicitation clause at issue is unenforceable.

Id. at 4.  Thus, Life Auto argues it is not precluded from obtaining evidence regarding its

claim that Fadalla solicited customers from Life Auto.  Id. at 5.

It is clear to this Court that Life Auto's request No. 1 could lead to information

relevant to Life Auto's claim for breach of the Non-Competition Agreement against

Fadalla and to Life Auto's defense against Fadalla's breach of contract claim, despite

O&C's argument to the contrary.  The Court has considered the Western District of

Tennessee Court's Memorandum Opinion Regarding [Life Auto's] Application for

Preliminary Injunction (Doc. 1, pp. 10-18), and while it is true that Judge Donald opined

it was unlikely that Fadalla's conduct violated the non-compete or the non-solicitation

covenants, a decision on a motion for a preliminary injunction is not a decision on the

merits and thus, "it is subject to change upon the ultimate trial on the merits." Entegris

v. Pall Corp., 490 F.3d 1340, 1352 (Fed. Cir. 2007) (citing Jack Guttman, Inc. v.

Kopykake Enters., Inc., 302 F.3d 1352, 1361 (Fed. Cir. 2002)).   Accordingly, Life

Auto's claims alleging breach of the non-compete and non-solicitation clause have not

been decided on the merits and thus, they are still relevant to this case.  Relevancy,

however, is not the only factor this Court is required to look at when balancing both Life

Auto's and O&C's interests.  In fact, this Court finds Judge Donald's analysis and in

particular, his statements that "Mr. Fadalla has abided by the terms drafted by [Life

Auto] in the agreement," and that "it is unlikely that Mr. Fadalla's conduct violated either

the non-compete or the non-solicitation covenants," (Doc. 1, p. 18) significant.  In fact

these statements seem to suggest many of Life Auto's requests may be unnecessary.

Nevertheless, the Court will consider the remaining factors relevant to this Motion to

Quash.

 The next issue before this Court is whether any of the information sought to be

discovered consists of protected information or trade secrets.  Life Auto's request No. 1

seeks information which would require O&C to produce its customer and supplier lists,

as well as prices, sales, and marketing information.  Florida law, which governs the

analysis here, defines trade secret as "information, including . . . a compilation that:"

> derives independent economic value, actual or potential, from not being
> generally known to, and not being readily ascertainable by proper means
> by, other persons who can obtain economic value from its disclosure or
> use; and is the subject of efforts that are reasonable under the
> circumstances to maintain its secrecy.

FLA. STAT. § 688.002 (4)(a) & (b) (2007).

Life Auto seeks information from O&C which would require O&C to disclose the

identity of its customers and suppliers, the products it currently markets or sells to such

customers and suppliers, its marketing strategies, and sales figures.  O&C derives

economic value from this type of information and has made reasonable efforts, i.e.,

through non-disclosure and secrecy agreements, to maintain the confidentiality of such

information.   See generally Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc., 216 F.R.D. 533, 536 (M.D. Fla. 2003) (stating Florida courts have held customer lists are trade secrets) (citations omitted); Merrill Lynch, Pierce, Fenner & Smith, Inc., 191 F. Supp. 2d 1346, 1351 (M.D. Fla. 2002) (stating customer lists which are confidential, and information contained within the customer lists are trade secrets); Merrill Lynch, Pierce, Fenner & Smith, Inc. V. Hagerty, 808 F. Supp. 1555, 1558 (S. D. Fla. 1992) (concluding customer list was a trade secret because Plaintiff took measures to ensure the list's confidentiality); accord  Feldman v. Community College of Allegheny, 85 Fed. Appx. 821, 827-28 (3d Cir. 2004) (affirming district court's decision to quash subpoena because customer lists are confidential and are entitled to protection as trade secrets); David White Instruments, LLC v. TLZ, Inc., No. 02 C 7156, 2003 WL 103014 (N.D. Ill. 2003) (citing Sigma Chemical Co. v. Harris, 794 F.2d 371, 373-74 (8th Cir. 1986) for the proposition that product and vendor files containing a supplier's name, price, and quality information, among other things, are trade secrets).  Some of O&C's non-disclosure and secrecy agreements even prohibit O&C from identifying the entity doing business with O&C.  The Court finds the information protected by the non-disclosure and secrecy agreements fall within the trade secret definition.

Once a party has shown that the requested information is a trade secret, it must next demonstrate disclosure might be harmful.  See Cytodone Technologies, Inc., 216 F.R.D. at 536.  Here, O&C states disclosure would be harmful because it would require O&C to breach its non-disclosure and secrecy agreements.  The Court is persuaded by O&C's reasoning.  Moreover, Life Auto is one of many suppliers used by O&C and is

-10-

the manufacturer of similar or competing products to those distributed by O&C. Because these two entities undoubtedly compete with each other in some aspects of their business, it is likely that O&C's business would be harmed if it was forced to produce all documents responsive to Life Auto's request No. 1. Id. at 536 (noting that disclosure to a competitor is generally more harmful than disclosure to a non-competitor).

Information which meets the definition of a trade secret and which may be harmful to a company if disclosed, is not automatically subject to unlimited protection. As mentioned above, Rule 45(c)(3)(B)(i) of the Federal Rules of Civil Procedure states, "if a subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information, the court may quash or modify the subpoena." Fed. R. Civ. P. 45(c)(3)(B)(i) & (ii).  If, however, the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions. Id.

The Eleventh Circuit has interpreted Rule 45(c)(3)(B)(i) to mean that the district court has discretion to quash, modify, or order the production of documents upon specified conditions; however, the Court may only order production of documents upon specified conditions if it determines the requesting party has shown substantial need for the documents which could not otherwise be met without undue hardship and that the person subject to the subpoena will be reasonably compensated.  Klay, M.D. v.

Humana Inc., 425 F.3d 977, 983 (11th Cir. 2005).  In its response, Life Auto failed to demonstrate substantial need for the requested information.  Moreover, Life Auto never averred that the requested information could not be obtained elsewhere without undue hardship.  Similarly, Life Auto failed to address whether C&O would be reasonably compensated for complying with the subpoena.  Life Auto's response to O&C's motion, as it pertains to request No. 1, is void of any responsive argument concerning confidentiality or protection of trade secrets.   As such, the Court is faced with the choice of quashing or modifying the subpoena.

"Generally, modification of a subpoena is preferable to quashing it outright." Wiwa, 392 F.3d at 818.  Accordingly, the Court will modify the subpoena.  In doing so, it notes that not only does Life Auto's request No. 1 seek confidential proprietary trade secrets, but it also places an undue burden upon O&C to respond to this request.   As Janis Oliver stated in her Affidavit, sorting through more than 54,000 emails, in addition to other forms of correspondence, will take an unlimited number of hours.  This is a burden that should not be thrust upon a non-party absent proof that it is necessary. Thus, the breadth of the subpoena should be modified.  In an effort to modify the subpoena, the Court has considered the type of documents Life Auto seeks to obtain, as mentioned by Life Auto in its response to this Motion.  (Doc. 14, p. 11).  Specifically, Life Auto seeks documents from O&C that:

1.	Identify the relationship between Fadalla, O&C and Engine Fog;

2.	Identify the products being manufactured for marketing, sale, distribution and/or representation by Fadalla;

3. Identify the products being marketed, sold, distributed and/or represented by Fadalla;

4. Identify the person or entity that Fadalla is marketing, selling, distributing and/or representing products to; and

5. Identify the volume of products being marketed, sold, distributed and/or represented by Fadalla.

Notably, it is unclear whether Life Auto has attempted to obtain any or all of this information from Fadalla himself – a party in the underlying case, or from some other means.  Nevertheless, the Court has considered the type of information Life Auto seeks and will attempt to balance both Life Auto's and O&C's interests in its modification of the subpoena.

While the first four categories of documents Life Auto seeks are relevant to Life Auto's defense and claims in the underlying action, many of these documents are confidential and meet the definition of trade secrets.  Because Life Auto has not persuaded this Court of its need for such documents, the Court will require O&C only to produce all non-confidential documents which provide information on any of the first four categories addressed in the preceding paragraph.  In lieu of producing information covered by O&C's non-disclosure agreements and secrecy agreements, O&C shall produce written answers which explicitly explain the following:

1. The relationship between Fadalla, O&C, and Engine Fog;

2. The role WGC plays in O&C's business; specifically, whether WGC is merely a trade name for a company that markets products, whether it is a brand of products, and/or whether WGC also manufactures products; and

3. The type of products Fadalla is selling, marketing, distributing, or representing, and the type of end-user to whom Fadalla is responsible for selling, marketing, distributing, and/or representing such products.

-13-

The Court finds merit in Life Auto's argument that documents which indicate whether or not Fadalla fulfilled his duties under the employment contract while he was still employed with Life Auto are relevant and thus, the Court finds any communications between Fadalla and O&C and/or WGC during Fadalla's employment with Life Auto are relevant and pertinent to this case.  Therefore, O&C shall also produce all correspondence between Fadalla and O&C and/or WGC, including any of their directors, officers, or employees, during the time period when Fadalla was still working for Life Auto, i.e. from June 5, 2005 through April 21, 2006.  Additionally, O&C shall produce all correspondence between Fadalla, O&C, and/or WGC, and any of their directors, officers, or employees, concerning information Fadalla disclosed to O&C or WGC about Life Auto.

The Court finds it necessary to further comment on some of the particular categories of documents which Life Auto seeks to obtain.  First, it notes that Life Auto seeks documents which may show Fadalla solicited EZ-Lube and/or other customers of Life Auto.  While this Court has already ordered production of documents which would be responsive to this request if they are not protected by non-disclosure or secrecy agreements, any confidential documents need not be disclosed for the reasons discussed above.  There is, however, an additional reason why these confidential documents should not be disclosed at this time.

There is little information before this Court which suggests Fadalla, through his association with O&C and/or WGC, has attempted to solicit Life Auto's clients.  In fact, the only entity which Life Auto specifically mentions as support for this claim is EZ Lube.

-14-

The parties have, however, already deposed Al Braun, the CEO for EZ Lube, who testified that Fadalla did not solicit his business; rather, he contacted Fadalla after ending his business relationship with Life Auto due to poor customer service and misleading business practices.  (Doc. 1, p. 12).  Moreover, this Court interprets the Western District of Tennessee Court's order denying Life Auto's motion for a preliminary injunction to mean that it is unlikely that the non-compete and non-solicitation clause at issue in this case will be enforced.   (Doc. 1, p. 18) ("As evidenced by the explicit language drafted by the defendant in the non-compete agreement and Mr. Braun's deposition testimony, it is unlikely that Mr. Fadalla's conduct violated either the non-compete or the non-solicitation covenants.")  Thus, while information responsive to this particular category of documents may be relevant absent any final order on the merits of this issue, Life Auto's claim appears speculative at best and O&C will not be forced to breach its non-disclosure and/or secrecy agreements absent additional facts or evidence demonstrating that this claim is nothing more than speculative.[6]  E.g., Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1326-1327 (Fed. Cir. 1990) (noting that when the court's judgment leads it to believe an inquiry is speculative, the discovery may be denied as irrelevant and stating "[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim").

---

[6]  Because Life Auto has not provided this Court with its cross claims against Fadalla, nor with specific facts demonstrating the basis for Life Auto's claims, at this time the Court cannot view Life Auto's solicitation claims as anything other than mere conjecture.  It is significant that Judge Donald relied, in part, on Al Braun's testimony in determining it was unlikely that Mr. Fadalla's conduct violated the non-solicitation covenant.  (Doc. 1, p. 18).

Life Auto also seeks to learn how Fadalla is compensated by O&C and the

volume of products for which Fadalla is marketing, selling, distributing and/or

representing.   Presumably, Life Auto seeks this information for the purpose of

assessing damages.   O&C is not obligated to provide documents responsive to either of

these requests at this time.   Damages are merely speculative at this point in the case

and this request is overbroad.   See Micro Motion, Inc., 894 F.2d at 1326.

The Court will now address Life Auto's remaining requests, but because the

Court's analysis with respect to Request No. 1 applies to several of Life Auto's other

requests, the Court will frequently refer to the foregoing analysis in modifying the

subpoena.

**Request No. 9:**

In its request No. 9, Life Auto seeks:

All correspondences, including electronic communications, between [O&C],
its directors, officers and employees and AMREP, International Lubricants
(Lube Gard), Engine Fog, Mighty Distributing Systems of America d/b/a
Mighty Auto Parts, Filpac Products and any other manufacturer, supplier,
or distributor of automotive chemicals, additive and lubricants, their
directors, officers, and employees regarding or in any way referencing
products sold or distributed or to be sold and distributed by O&C, WGC
and/or Advance Automotive Chemistry by Michael Fadalla and/or under the
WGC and/or Advance Automotive Chemistry brand name from June 1,
2005 to present.

O&C responded to this request by stating it has no responsive documents relating to

International Lubricants (Lube Gard), Mighty Distributing Systems of America d/b/a

Mighty Autoparts, and Filpac Products.   Life Auto, however, continues to seek the

remainder of documents relevant to this request.   O&C makes the same arguments

concerning confidentiality, undue burden, and relevancy that it did in response to Life

Auto's request No. 1.  (Doc. 1).

Life Auto responds the requests are relevant because this information will show the type of products being manufactured for/or supplied by O&C, WGC and/or Fadalla which Fadalla is marketing, selling, or representing.  (Doc. 14, p. 13).  Further, Life Auto asserts this request will lead to the discovery of the identities of Life Auto's customers that Fadalla has contacted on behalf of O&C, WGC, and/or on his own behalf after he became affiliated with O&C.  Id.  Moreover, according to Life Auto, the requested documents will provide information on the volume of Fadalla's sales and will thus, lead to discovery of which of Life Auto's customers Fadalla has attempted to solicit, and the extent of Life Auto's damages.  Id.  Life Auto also takes issue with O&C's confidentiality claims because, it contends, O&C has not provided the Court with any proof that any of the entities which are the subject of the subpoena are subject to the non-disclosure agreements.  Id.

The Court finds this request is structured to encompass the same type of confidential information from O&C as sought pursuant to Life Auto's request No. 1, and full compliance with this request would subject O&C to undue burden.  While the Court notes the request seeks information which may be relevant to Life Auto's claims, it reemphasizes that O&C has demonstrated some of this information is confidential business information that if disclosed, could be harmful to its business.  In particular, this Court will not require O&C to produce information covered under its non-disclosure and secrecy agreements with its customers and suppliers.  With regard to the information which is not confidential, this Court refers to its findings with respect to Life Auto's

request No. 1.  The subpoena is modified to the extent addressed in the above section

and O&C shall comply with this Court's holding to Life Auto's request No. 1.

**Request No. 11:**

Life Auto's request No. 11 seeks:

All invoices submitted by AMREP, International Lubricants (Lube Gard),
Engine Fog and any other manufacturer, supplier or distributor of
automotive chemicals, additives and lubricants to [O&C], WGC, Advance
Automotive Chemistry and/or Michael Fadalla for products sold or
distributed or to be sold and distributed by [O&C], WGC and/or Advance
Automotive Chemistry by Michael Fadalla and/or under the WGC and/or
Advance Automotive Chemistry brand name from June 1, 2005 to present.

While O&C did not address Life Auto's Request No. 11 in its motion to quash, it did

object to request No. 11 based on the same confidentiality and overbreadth concerns it

cited for the requests above.  (Doc. 7, p. 5).  Life Auto, on the other hand, addresses the

relevancy of this request in its response the Motion to Quash, and thus, this Court will

consider this request.  (Doc. 14, pp. 14-15).

Life Auto argues this request aims to discover the invoices relating to products

being manufactured for and/or supplied to O&C, WGC and/or Fadalla, which Fadalla is

marketing, selling, or representing.  Id.  Life Auto further argues this request will identify

any of Life Auto's customers that Fadalla contacted on behalf of O&C, WGC, or on his

own behalf following his termination from Life Auto.  Id.  Life Auto also claims this

request will lead to discovery of the identity of the type of product being supplied and

marketed, sold or represented by Fadalla and will provide information on the volume of

Fadalla's sales.  Id.

This Court has already stated it will require O&C to identify the types of products

-18-

which Fadalla is supplying, marketing, and/or selling through his association with O&C

and/or WGC.  To the extent the invoices and identity of O&C's customers fall within the

non-disclosure and secrecy agreements, they need not be produced.  Moreover, Life

Auto is not entitled to discover the volume of Fadalla's sales, as this inquiry is simply

overbroad and irrelevant at this point in the case.

### Request No. 12:

In its Request No. 12, Life Auto seeks:

> All supplier contract and agreements between [O&C], WGC, Advance
> Automotive Chemistry and/or Michael Fadalla and Filipac, Mighty
> Distributing Systems of America d/b/a Mighty Auto Parts, EZ Lube, Express
> Oil Change and any other supplier, distributor or installer of automotive
> chemicals, additives, and lubricants for products sold or distributed or to be
> sold and distributed by [O&C], WGC and/or Advance Automotive Chemistry
> by Michael Fadalla and/or under the WGC and/or Advance Automotive
> Chemistry brand name in effect during the period of June 1, 2005 to
> present.

O&C filed the same confidentiality and overbreadth objections to this request as it did in

the above requests.  (Doc. 7, p. 5).  Life Auto seeks this request in order to discover the

identity of the product being supplied and the identity of the entity to whom it is being

supplied.  The Court has already addressed this issue pursuant to Life Auto's request

No. 1.  The Court further notes this request is overbroad in scope.  It seeks all of O&C's

supplier contracts for automotive products sold under the WGC and/or Advance

Automotive Chemistry labels, whether or not they have any relevance to Fadalla.  As this

Court has stated earlier, O&C will not be required to supply this information for any

entities with whom it has entered into a non-disclosure or secrecy agreement; nor will it

need to comply with this request to the extent that Fadalla is not involved in some of

these agreements.  The Court's holding with respect to Life Auto's request No. 1 already requires O&C to supply Life Auto with the non-confidential information relating to this request.  Nothing more is required of O&C at this time.

### Request No. 13:

Life Auto's request No. 13 seeks "[a]ll invoices, statements and bills submitted to [O&C], WGC, Advance Automotive Chemistry and/or Michael Fadalla for the label development of WGC and/or Advance Automotive Chemistry branded products, including those invoices, statements and bills submitted for graphic art design, from January 1, 2003 to present."  O&C objects to this request because compliance with this request would require O&C to produce confidential business information.  (Doc. 1, pp. 3-6).  Moreover, O&C argues this request seeks nearly five years worth of documents and thus, it is overbroad.  Id. at 6-7.  Finally, O&C argues Life Auto has failed to define what is meant by the term "label development" and thus, the request is vague.  Id. at 7.

Life Auto responds "[t]his request is calculated to discover documents relating to the development of O&C's WGC brand both before and after Fadalla became affiliated with it or the brand name WGC." (Doc. 14, p. 15).  Life Auto further explains the relevance of this request by noting it believes the documents will show that there was a renewed interest in promoting the WGC brand, following Fadalla's departure from Life Auto and that the products already marketed by or to be marketed by the WGC brand are in competition with Life Auto.  Id. at 16.  Life Auto argues this information is relevant to Life Auto's claim that Fadalla is engaged in a scheme to solicit customers from Life Auto and the extent of Life Auto's damages.  Id.

While this request seeks information which may have some relevance to Life Auto's claim that Fadalla is engaged in a scheme to solicit customers, it is minimal in light of Judge Douglas' Opinion finding that Fadalla likely did not breach the non-solicitation contract.  Even more persuasive, however, is the fact that this request seeks information, over the course of five years, related to O&C's development of one of its trade names or brands.  Disclosing this information would force O&C to provide Life Auto with financial and marketing information -- information which is most certainly confidential and proprietary.  Thus, this request will be quashed.

### Request No. 15:

In request No. 15, Life Auto seeks: "All documents, including cancelled checks, reflecting payment by [O&C], WGC, Advance Automotive Chemistry and/or Michael Fadalla for the label development of WGC and/or Advance Automotive Chemistry branded products, including payments made for graphic art design, from January 1, 2003 to present."  O&C objects to this request on the same basis it objected to request No. 13, i.e., because it seeks confidential business information, it is overbroad, vague, and irrelevant to the underlying case.  (Doc. 1, pp. 3-8).  Life Auto asserts this request is relevant for the purpose of proving that Fadalla is engaged in a scheme to solicit customers from Life Auto by marketing products under the WGC brand name in competition with Life Auto.  (Doc. 14, p. 16).

As stated in the previous section, this request seeks confidential information related to O&C's development of its trade names or brands, including information on O&C's marketing efforts.  Because this information is confidential and of little relevance

to the underlying claims, request No. 15 is also quashed.

### B.     Engine Fog's Motion to Quash

Life Auto served a subpoena on the keeper of books and records for Engine Fog

on August 27, 2007, seeking production of various categories of documents.  Engine Fog

objected to multiple requests in the subpoena, and thereafter, filed this Motion to Quash

(Doc. 3).  Engine Fog requests this Court quash request Nos. 1-6, 8, 9, and 13-18.  Life

Auto notes that Engine Fog has not submitted any documents responsive to the

subpoena, but recognizes Engine Fog's statement that it does not have items responsive

to Nos. 7, 10, 11, 12 and 19.  Additionally, Life Auto states it will withdraw its request No.

8.  Therefore, Life Auto states requests 1-6, 9, and 13-18 are at issue.

Notably, some of these requests are substantially similar to the requests served

upon O&C which have already been addressed by this Court.  For efficiency, the Court

will address these requests together based on the objections asserted by Engine Fog.

For the sake of clarity, however, the Court will set forth each of Life Auto's requests

below:

### Request No. 1:

All correspondences, including electronic communications, between Engine
Fog, its directors, officers and employees and Michael Fadalla, WGC
and/or Advance Automotive Chemistry from June 1, 2005 to the present.

### Request No. 2:

All correspondences, including electronic communications, between Engine
Fog, its directors, officers and employees and [O&C] regarding or in any
way referencing Michael Fadalla, WGC and/or Advance Automotive
Chemistry from June 1, 2005 to present.

### Request No. 3:

All correspondences, including electronic communications, between Engine Fog, its directors, officers and employees and any manufacturer, supplier, distributor or installer of automotive chemicals, additives and lubricants regarding or in anyway referencing Michael Fadalla, WGC and/or Advance Automotive Chemistry from June 1, 2005 to present.

### Request No. 4:

All correspondences, including electronic communications, between Engine Fog, its directors, officers and employees and [O&C] its directors, officers and employees regarding or in anyway referencing products sold or distributed or to be sold and distributed by Michael Fadalla, WGC and/or Advance Automotive Chemistry under the WGC and/or Advance Automotive Chemistry brand name from June 1, 2005 to present.

### Request No. 5:

All correspondences, including electronic communications, between Engine Fog, its directors, officers and employees and [O&C] its directors, officers and employees regarding or in anyway referencing products sold or distributed or to be sold and distributed by Michael Fadalla, [O&C], WGC and/or Advance Automotive Chemistry under a private label or private branded name from June 1, 2005 to present.

### Request No. 6:

All correspondences, including electronic communications, between Engine Fog, its directors, officers and employees and [O&C] its directors, officers and employees regarding or in anyway referencing products sold or distributed or to be sold and distributed by Michael Fadalla, [O&C], WGC and/or Advance Automotive Chemistry as an upper engine cleaner from June 1, 2005 to present.

### Request No. 9:

All contracts, and agreements, including licensing agreements, between Engine Fog, its directors, officers and employees and any manufacturer, supplier or distributor of an upper engine cleaner from June 1, 2005 to present.

### Request No. 13:

All invoices submitted by Engine Fog to Michael Fadalla, O&C, WGC, and/or Advance Automotive Chemistry for products sold or distributed by Michael Fadalla, O&C, WGC and/or Advance Automotive Chemistry under the WGC and/or Advance Automotive Chemistry brand name from June 1, 2005 to present.

### Request No. 14:

All invoices submitted by Engine Fog to Michael Fadalla, O&C, WGC, and/or Advance Automotive Chemistry for products sold or distributed by Michael Fadalla, O&C, WGC and/or Advance Automotive Chemistry under the private branded name from June 1, 2005 to present.

### Request No. 15:

All invoices submitted by Engine Fog to Michael Fadalla, O&C, WGC, and/or Advance Automotive Chemistry for products sold or distributed by Michael Fadalla, O&C, WGC and/or Advance Automotive Chemistry as an upper engine cleaner from June 1, 2005 to present.

### Request No. 16:

All correspondences, including electronic communications, between Engine Fog, its directors, officers and employees and any manufacturer, supplier, distributor or installer of automotive chemicals, additives and lubricants regarding or in anyway referencing products sold or distributed or to be sold and distributed by Michael Fadalla, O&C, WGC and/or Advance Automotive Chemistry under the WGC and/or Advance Automotive Chemistry brand name from June 1, 2005 to present.

### Request No. 17:

All correspondences, including electronic communications, between Engine Fog, its directors, officers and employees and any manufacturer, supplier, distributor or installer of automotive chemicals, additives and lubricants regarding or in anyway referencing products sold or distributed or to be sold and distributed by Michael Fadalla, O&C, WGC and/or Advance Automotive Chemistry under a private label or private branded name from June 1, 2005 to present.

**Request No. 18:**

All correspondences, including electronic communications, between Engine Fog, its directors, officers and employees and any manufacturer, supplier, distributor or installer of automotive chemicals, additives and lubricants regarding or in anyway referencing products sold or distributed or to be sold and distributed by Michael Fadalla, O&C, WGC and/or Advance Automotive Chemistry as an upper engine cleaner from June 1, 2005 to present.

**Overbreadth, Undue Burden, and Irrelevance**

Engine Fog argues requests Nos. 1-6, 9, and 13-18 should be quashed because they seek confidential business information, including information regarding new product technology. Engine Fog asserts it has non-disclosure agreements with some of its distributors, including O&C, and by disclosing the requested information, it would be forced to breach those agreements. (Doc. 3, pp. 3-6). Additionally, Paul Hughett, the President of Engine Fog, filed an affidavit attesting to these facts and averring that Engine Fog and Life Auto both manufacture automotive chemicals and are thus, direct competitors. (Doc. 4). Engine Fog also objects to these requests because responding to them would be unduly burdensome and because they are irrelevant, based on the opinion issued by the District Court in the Western District of Tennessee. (Doc. 3, pp. 6-8). Finally, Engine Fog asserts the nature of requests Nos. 16-18 are overbroad. (Doc. 4, p. 7).

In its response to Engine Fog's Motion to Quash, Life Auto explains the type of information which it seeks from the subpoena and clarifies what type of information it is not seeking. This portion of Life Auto's memorandum is identical to its memorandum responding to O&C's Motion to Quash. Notably, Life Auto aims to discover documents

identifying the particular products being manufactured for and/or supplied to Fadalla and/or WGC, which Fadalla is marketing, selling, or representing.  (Doc. 13, p. 8). Life Auto also seeks to obtain information regarding the volume of Fadalla's sales.  Id.

While the Court acknowledges Life Auto seeks documents which may have relevance to the underlying case, it has framed its requests too broadly.  The requests are drafted to include communications between Engine Fog and O&C or other companies that may have no relevance to Fadalla.  For instance, each of the requests seek information relating to WGC and/or Advance Automotive Chemistry whether or not they involve Fadalla.

The Court finds merit in Engine Fog's argument that disclosing documents relevant to each of the requests would cause Engine Fog to breach its non-disclosure and secrecy agreements with O&C and other distributors.  Thus, the Court's analysis above, with respect to its finding that information within O&C's non-disclosure and secrecy agreements are trade secrets, likewise applies to information protected by Engine Fog's non-disclosure and secrecy agreements.  In particular, because the Court finds Life Auto's requests seek information, some of which Engine Fog has made efforts to keep confidential and because Life Auto has not demonstrated a substantial need for such documents, the Court will allow Engine Fog to withhold information which is subject to the non-disclosure and secrecy agreements it has with O&C and any other distributors at this time.

On the other hand, other than a conclusory statement that it would cause undue burden on Engine Fog to obtain all of the documents requested, Engine Fog fails to

provide this Court with details regarding approximately how many responsive documents it has and how many hours of review would be required to produce such information. Thus, the Court is not persuaded that responding to these requests would cause an undue burden on Engine Fog.

The Court has taken the above factors into consideration and in its attempt to balance the relevance of the requests against the fact that the requests are overbroad and seek confidential information, it finds Life Auto's requests should be modified. Consequently, the Court directs Engine Fog to provide the following information to Life Auto: (1) a description of its relationship with Fadalla and O&C; (2) a description of the types of products Engine Fog has leased or supplied to Fadalla, WGC, Advance Automotive Chemistry, and/or O&C which Fadalla is responsible for marketing, selling, or representing; (3) non-confidential communications between Engine Fog and Fadalla concerning Fadalla's relationship with Engine Fog, O&C, WGC and/or Advance Automotive Chemicals; (4) non-confidential communications between Engine Fog and WGC, O&C, and/or Advance Automotive Chemical concerning Fadalla's relationship with any of these entities; and (5) all correspondence it had with Fadalla, or with O&C concerning Fadalla, during Fadalla's employment with Life Auto (June 1, 2005 through April 21, 2006).

Engine Fog is not required to produce information relating to any of its new product technology which it deems confidential; nor is it required to produce its invoices or information related to the volume of Fadalla's sales at this time, for the same reasons addressed by this Court in its findings on O&C's Motion to Quash.

-27-

III.   **CONCLUSION**

Some of the information Life Auto seeks from both O&C and Engine Fog is relevant to Life Auto's claims and defense against Fadalla; however, full compliance with many of these requests would require O&C and Engine Fog to disclose confidential trade secrets.  O&C has also demonstrated it would be unduly burdensome to respond to Life Auto's requests.  These facts coupled with fact that Life Auto failed to provide this Court with evidence that it has a substantial need for the information and that it is unable to obtain it from another source, lead this Court to conclude that modification of the subpoena is necessary.  Thus, the Court has attempted to balance the movants' interests against those of Life Auto's and has modified the subpoenas accordingly, as detailed in this opinion.

After due consideration, it is

**ORDERED**:

1.      The Motion to Quash Subpoena filed by non-party Oliver & Company, Inc. (Doc. 1) is **GRANTED in part, and denied in part**, in accordance with this Order.

2.      The Motion to Quash Subpoena filed by non-party Engine Fog, Inc. (Doc. 3) is **GRANTED in part, and denied in part**, in accordance with this Order.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  27th  day of November, 2007.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Any Unrepresented Party